THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ ENRIQUE GELPÍ ET AL., Defendants and Appellants.

No. 8906. Argued November 17, 1941.—Decided December 3, 1941.

*J. Ramírez Viñas* for appellants. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The appellants were charged with and convicted of keeping a house of ill fame in Santurce, thus violating the provisions of Section 287 of the Penal Code in force. Upon each being sentenced to pay a fine of $50 and, in default of such payment, to imprisonment, they took the present appeal, and in support thereof they urge: (*a*) that the evidence is insufficient to establish a violation of Section 287 of the Penal Code, and (*b*) that the lower court erred in admitting hearsay evidence prejudicial to the defendants.

The legal provision alleged to have been violated reads thus:

"Section 287.—Every person who keeps a house of ill fame in Porto Rico, resorted to for the purpose of prostitution, or lewdness, or who wilfully resides in such house, is guilty of a misdemeanor."

Let us sum up the evidence in order to determine whether the same is sufficient to support the judgment appealed from.

Detective Alfredo Matos testified: That on the night of September 29, 1940, he and detectives Julio González and Angel Medina presented themselves at the boarding house of Enrique Gelpí and searched the premises where they found four or five couples, each couple in a single room, who were taken to the police station; that defendant Gelpí was not in the house at the time, but defendant Ramona Ortiz stated

that it was Gelpí's business and that she was managing the same, as his wife or concubine; that the detectives had to wait until the persons in the rooms dressed; that in a small house in the yard there was a couple in night clothes lying in bed; that all this took place at about 9:30 in the evening; that the couples found there were not married pairs; that the couples in question stated in Gelpí's presence that they were not married couples, that they were carrying on clandestine love affairs and that they frequented that house to have a good time; that one of them called Engracia said that she frequented the place to perform carnal acts; and that defendant Ramona Ortiz failed to object to such statements made in her presence.

Detective Angel Medina corroborated the testimony of his colleague Alfredo Matos and stated: That when defendant Ramona Ortiz was asked what these persons found there were doing, she told them that said persons paid 50 cents in advance in order to pass a while having carnal commerce; that next day he saw Gelpí who told him that that house was a boarding house and that he was going to defend himself in court; that it is true that defendant Ortiz had told him that the house was owned by defendant Gelpí; that they had received complaints regarding said house and had watched it; that on coming upon the people in night clothes inside the rooms, he asked them whether they were married, to which they answered in the negative, that they were not living there and that they only used to call there in order to have sexual intercourse, and that defendant Ortiz would charge them 50 cents in advance for the use of the bed; that all the above statements were made in the presence of Ramona Ortiz who failed to protest.

A motion for a peremptory discharge of the defendants having been denied, defendant Gelpí took the stand and testified: That he lives in the same premises where he keeps the business for which he has been prosecuted; that his is a hotel

business in which he charges $1.25 for room and board; that the food is supplied by defendant Ortiz; that he keeps rooms "and that when a married couple present themselves they sign and we send the register to the police station, and when we question them as to whether they are married they say yes"; that they have been there for ten years and that there has never been any scandal in his house; that at the time the couples arrived who had been found there, he was in Mayagüez; that the usual practice is to take their names, that they themselves sign; that he owns the house and defendant Ortiz is his agent.

Defendant Ramona Ortiz testified: That it is a hotel business; that when a married couple call, their names and surnames are taken; that they always state that they are married and take a room for the night and pay half a dollar and those who stay for lunch next day pay $1.25.

The evidence is, in our judgment, sufficient to support the information and the sentence. All the facts and circumstances of the case tend to show that the so-called boarding house of Gelpí, managed by his wife or concubine, is nothing but a house of ill fame frequented for the purpose of prostitution and lewdness. See *People* v. *Zayas*, 26 P.R.R. 487; and *People* v. *Avilés*, 30 P.R.R. 782.

■ The statements made by the persons found at the time in said house in the presence of defendant Ortiz, without any denial or objection on the latter's part, are admissible against her, and it was not error for the lower court to admit them. 16 C. J. 631, par. 1256. Said statements were also admissible against the defendant Gelpí, as a part of the *res gestae,* especially if account is taken of the fact that said defendant expressly admitted in his testimony that he was the owner of the alleged house of ill fame.

The judgment appealed from must be affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.